**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LETICIA SANCHEZ-ANGELES ) <br> 2248 Mount View Place SE ) <br> Washington, DC 20020 ) <br> ) <br> JAMIL AROUNI ) <br> 10604 Wyld Dr. ) <br> Upper Marlboro, MD 20772 ) <br> ) <br> *on behalf of themselves and all others* ) <br> *similarly situated* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNIVERSAL PROTECTION ) <br> SERVICE, LLC ) <br> 161 Washington Street, Suite 600 ) <br> Eight Tower Bridge ) <br> Conshohocken, PA 19428 ) <br> ) <br> Defendant. ) | Civil Action No. _____ <br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

1.      Plaintiffs are current or former employees of the Defendant Universal Protection Service, LLC, d/b/a Allied Universal ("Allied Universal"), and they bring this action as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) and the District of Columbia Minimum Wage Revision Act (DCMWRA), D.C. Code § 32-1012, against the Defendant on behalf of themselves and all others similarly situated because of Defendant's unlawful deprivation of Plaintiffs' rights to overtime compensation. Plaintiffs Leticia Sanchez-Angeles and Jamil Arouni also bring this action as a class action on behalf of themselves and all others similarly situated in accordance with Fed. R. Civ. P. 23. Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and compensation, damages, equitable and other relief available

under the FLSA, as amended, 29 U.S.C. § 201 *et seq.*, and the DCMWRA, D.C. Code § 32-1001, *et seq.*

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 28 U.S.C. § 1367(a).

3. Venue lies within this district pursuant to 28 U.S.C. § 1391.

## PARTIES

4. At all times material, each of the Plaintiffs listed in Exhibit A has been employed by Defendant as a Special Police Officer ("SPO") and assigned to work at the U.S. Government Accountability Office location at 441 G Street NW, Washington, DC 20226. In addition to representative Plaintiffs Leticia Sanchez-Angeles and Jamil Arouni, additional opt-in Plaintiffs have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1012(b). Such consents are appended to this Complaint as Exhibit A. Plaintiffs bring this action as a collective action on behalf of themselves and all others similarly situated in accordance with 29 U.S.C. § 216(b) and the DCMWRA. Plaintiffs Sanchez-Angeles and Arouni also brings this action as a class action on behalf of themselves and all others similarly situated in accordance with Fed. R. Civ. P. 23.

5. Plaintiff Arouni has been employed as an SPO and assigned to 441 G St NW, Washington, DC 20226, since approximately September 2019, two weeks prior to the date that ASP began providing security services at this location. Plaintiff Sanchez-Angeles has been employed as an SPO and assigned to 441 G St NW, Washington, DC 20226, since approximately August 2021.

6. Each of the Plaintiffs in this action, while employed by Defendant, has been an

"employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), and the DCMWRA, D.C. Code § 32-1002(2).

7. Defendant Universal Protection Service, LLC, d/b/a Allied Universal, is a foreign corporation registered to do business in the District of Columbia, and its registered agent for service of process in the District of Columbia is CT Corporation System, 1015 15th Street NW, Washington, DC 20005. Defendant has been contracted to provide security services to the building housing the U.S. Government Accountability Office located at 441 G Street NW, Washington, DC 20226, since approximately April 2021, when it acquired the company that previously held the contract for security services at this location, American Security Programs ("ASP").

8. ASP was Georgia-based private security services company. Prior to approximately January 2021, ASP was a wholly owned-subsidiary of SecurAmerica. In January 2021, Defendant Allied Universal acquired SecurAmerica and, with it, ASP. Upon information and belief, ASP ceased existing as an independent subsidiary at this time and was wholly absorbed by Allied Universal. As such, Defendant Allied Universal is a successor employer to ASP.

9. Upon information and belief, ASP contracted to provide security services to the building housing the U.S. Government Accountability Office located at 441 G Street NW, Washington, DC 20226, beginning on approximately October 1, 2019. ASP continued to provide such services at this location until the company was acquired by Universal and took over the contract in approximately April 2021.

10. At all times material, Defendant has been an employer within the meaning of 29 U.S.C. § 203(d) and D.C. Code § 32-1002(3).

11. At all times material to this action, Defendant has been enterprises engaged in commerce as defined by 29 U.S.C. § 203(r)(1), and their annual dollar business volume has

exceeded $500,000. Defendant has actively been conducting business in the District of Columbia.

**FACTS**

12. Plaintiffs are, and have been at all times material, employed by Defendant in the position of Special Police Officer ("SPO") and assigned to work at the building housing the U.S. Government Accountability Office located at 441 G Street NW, Washington, DC 20226.

13. ASP began providing security services at 441 G Street NW, Washington, DC 20226, in October 2019. In or around April 2021, Defendant Allied Universal took over the contract for security services at the 441 G Street NW location as a result of its acquisition of SecurAmerica and ASP. There was no new contracting process for this location when Allied Universal acquired ASP.

14. Defendant Allied Universal adopted and continued the pay policies and practices of ASP when it took over the contract for security services at 441 G Street NW, Washington, DC 20226. As such, the unlawful policies and practices alleged herein have been in place since approximately October 2019.

15. Indeed, Plaintiffs have been told that they are not able to roll over any retirement-related savings or accounts opened under ASP because they are currently "employed by the same employer" as when they opened the accounts.

16. When SPOs have approached Defendant Allied Universal regarding its failure to provide compensation for pre-shift, post-shift, and meal period work time, Defendant has stated that ASP did not pay for that time, so neither does Allied Universal. In addition, the union representing SPOs at 441 G Street NW, Washington, DC 20226, has repeatedly raised to both ASP and Defendant Allied Universal issues regarding the unlawful pay policies and practices described herein which have been in place since at least October 2019.

17.     Upon information and belief, when Defendant Allied Universal acquired ASP through its purchase of SecurAmerica, Allied Universal continued to employ all of the SPOs and managerial staff that had previously been employed by ASP at 441 G Street NW, Washington, DC 20226.

18.     At all times material, and at least since October 2019 when ASP began providing security services at 441 G Street NW, Washington, DC 20226, the job duties of Plaintiffs in their position as SPOs have included, but are not limited to, ensuring the security of the building and its occupants, providing a security presence on the property, conducting routine patrols inside and outside of the building, and ensuring the security of parking garages and other building access points.

19.     Defendant schedules SPOs for "regular" shifts of eight (8) hours, or "short" shifts of approximately six (6) hours, depending on the post to which each SPO is assigned. Defendant automatically deducts 30 minutes of pay from employees scheduled for a "regular" shift as an unpaid meal period.

20.     Plaintiffs are regularly scheduled to, and do, work at least 40 hours per workweek. When Plaintiffs work more than 40 hours in a workweek because they work pre-shift, post-shift, and during their unpaid meal breaks as described herein, Defendant fails to compensate them for such work time at one and one-half times their regular rates of pay for all hours worked in excess of 40 in a workweek.

21.     Defendant pays SPOs on a weekly basis.

22.     On some shifts, Defendant requires SPOs to report for a pre-shift roll call and briefing conducted by a Supervisor, typically a Lieutenant. Even though attendance is mandatory, Defendant does not compensate the majority of SPOs for attending roll call. Whether the employee

will be paid for 15 minutes of overtime for attending the mandatory roll call time depends on the SPO's post assignment and is determined solely by Defendant. Defendant refuses to pay Plaintiffs for the pre-shift roll call unless their post has been designated by Defendant as eligible for such compensation, even when the Plaintiffs actually attend the roll call.

23. SPOs are required to carry equipment and weapons during their shifts, including handcuffs, baton, radios, firearms, ammunition. These items are required to be retrieved prior to the start of an employee's shift from an armory on Defendant's premises.

24. SPOs are expected to report to their post assignment with all issued weapons and equipment at the start of their scheduled shift. For SPOs who are expected to attend a pre-shift roll call, SPOs are required to report to roll call with all issued weapons and equipment.

25. Plaintiffs necessarily arrive before the start of their paid shift and spend approximately 10-15 minutes performing work. This work includes but is not limited to "gearing up" at the armory, where they are issued all weapons and equipment. In fact, Defendant has disciplined SPOs for failing to report before the start of their paid shift to gear up, noting that they expect SPOs to be *on post* with all required equipment at the start of their paid shift.

26. The process of "gearing up" includes but is not limited to being issued a firearm, ammunition, and a radio or radio battery (if they are relieving another officer who has already been issued a radio). Plaintiffs are then expected to inspect and load their weapon, prepare their weapon, and load it into their holster. Plaintiffs are also expected to confirm that their radio is in good working order. Depending on their post assignment, SPOs may also be issued keys.

27. When SPOs are issued their weapons and equipment, the time that these items are issued is recorded by Plaintiffs' supervisors in a log maintained by the Defendant. However, Plaintiffs' supervisors record the only the scheduled shift time and not the actual time their

weapons or equipment are issued. Defendant does not rely on these weapons logs for payroll or timekeeping purposes.

28. Plaintiffs are required to sign a paper timesheet at the start of their shift, which is pre-printed with their scheduled shift time. When Plaintiffs have asked whether the timesheet can be corrected to reflect that they arrived early and performed work prior to the scheduled shift time, Defendant has instructed that the timesheet cannot be changed and is "correct as written."

29. Every time that Plaintiffs enter the SPO office, where the timesheet is available to be signed, Plaintiffs are expected to swipe into the office by using their assigned card reader/badge.

30. Although Defendant automatically deducts 30 minutes of pay for an unpaid meal period on occasions that SPOs are working a "regular" shift, Plaintiffs are not provided with a duty-free meal break. Defendant's policy does not permit Plaintiffs to disarm for their meal periods, but Plaintiffs are not permitted to leave the premises while carrying their issued firearm. In addition, Plaintiffs are required to maintain their radio during meal breaks and respond to radio calls and/or incidents as necessary. As such, Plaintiffs spend their meal periods in the locker room, with their issued firearms and actively monitoring their radios.

31. In addition to the circumstances described in Paragraph 30, Plaintiffs assigned to "relief" or "break guard" posts are not permitted to return to the locker room during a meal break. In a "relief" post, the Plaintiff does not have a fixed assignment but instead spends their shift relieving other officers and working those posts while the permanently assigned officer leaves the post for a break. Plaintiffs are routinely deprived of meal breaks when working "relief" posts because, in addition to the requirement to maintain their weapon and respond to radio calls, Plaintiffs are regularly assigned to work only the first half of the shift in the "relief" position and are then required to work a fixed post for the second half of the shift in order to fill a vacancy

resulting from chronic understaffing; at that time, there will be no other "relief" officer who can provide the SPO previously assigned as the "relief" officer with a duty-free 30-minute meal break.

32. At the end of their paid shift, Plaintiffs are not permitted to vacate, or leave, their post until either the end of their paid shift (if they are working a post with no scheduled relief) or until they have been properly relieved on-post by an oncoming officer (if they are working a post that includes relief). As such, Plaintiffs necessarily and routinely perform approximately 10-15 minutes of unpaid work after the end of their paid tour.

33. When an employee is relieved by another officer, they must exchange radios and discuss any pertinent information with the oncoming tour. During this shift exchange, only one of the two SPOs participating in the exchange is being paid.

34. On certain posts where there is no oncoming relief, including but not limited to traffic posts, Plaintiffs are expected to "close out" the post right at the end of their scheduled shift. They are not permitted to close out the posts prior to the end of their paid shift. Plaintiffs are then expected to store equipment or other items, such as traffic cones or stop signs, after the end of their scheduled shift and prior to returning to the armory to "gear down."

35. Once Plaintiffs leave their assigned post, they must return to the armory to "gear down" by turning in their weapon and equipment. Defendant typically records the Plaintiffs' shift end time in the log, rather than the actual time that the Plaintiffs' weapons and equipment is returned, and does not rely on this information for payroll purposes.

36. Plaintiffs continue to perform the work described in Paragraphs 32-35 for approximately 10-15 minutes after the end of their scheduled and paid shifts but are not compensated for that work time.

## COLLECTIVE ACTION FOR VIOLATIONS OF THE FLSA AND DCMWRA

37. Defendant has violated the provisions of the FLSA and the DCMWRA, resulting in damages to Plaintiffs and those similarly situated to Plaintiffs in the form of unpaid wages, incurred and incurring costs, and reasonable attorneys' fees and expenses.

38. As a result of the overtime pay violations of the FLSA and DCMWRA, Plaintiffs Sanchez-Angeles and Arouni, as well as those similarly situated to them, have suffered damages by failing to receive their lawful wages for all hours worked in excess of 40 in a workweek during their tenure of employment with Defendant. In addition to the amount of unpaid wages owing to the Named Plaintiffs, and those similarly situated to the Plaintiffs, they are also entitled to an additional amount as liquidated damages pursuant to 29 U.S.C. 216(b). Under D.C. Code § 32-1012(b)(1) and D.C. Code § 32-1308(1)(A)(ii), Plaintiffs Sanchez-Angeles and Arouni and all those similarly situated to her are entitled to an additional amount equal to three times the amount of unpaid wages as liquidated damages.

39. Plaintiffs Sanchez-Angeles and Arouni and those similarly situated are also entitled to an award of attorneys' fees and expenses pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1012(c).

40. Defendant's actions in failing to compensate Plaintiffs Sanchez-Angeles and Arouni and other similarly situated employees of Defendant in accordance with the provisions of the FLSA and DCMWRA were willful and not in good faith.

41. There are numerous other similarly situated employees and former employees of Defendant who have been improperly compensated in violation of the FLSA and DCMWRA and who would benefit from the issuance of court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Specifically, all employees and former employees of Defendant

who have been employed by the Defendant as Special Police Officers assigned to U.S. Government Accountability Office building located at 441 G Street NW, Washington DC 20226, at any time since March 7, 2019, should receive notice and the opportunity to join the present lawsuit.

## CLASS ACTION ALLEGATIONS FOR VIOLATIONS OF THE DCMWRA

42. Defendant has violated the provisions of the DCMWRA, resulting in damages to Plaintiffs Sanchez-Angeles and Arouni and all Class members in the form of unpaid wages, liquidated damages, incurred and incurring costs, and reasonable attorneys' fees.

43. The DCMWRA permits class actions. D.C. Code § 32-1012(a); D.C. Code § 32-1308(a)(1)(C).

44. The Class is defined as follows: "All individuals employed as non-supervisory Special Police Officers by Defendant at the U.S. Government Accountability Office building located at 441 G Street NW, Washington DC 20226 at any time since March 7, 2019."

45. Upon information and belief, there are approximately 40 members of the Class. Thus, the Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, class members are known to Defendant, are readily identifiable by the Defendant, and can be located through Defendant's work and payroll records.

46. There are questions of law and fact common to the members of the Class, including but not limited to:

> (a) Whether Defendant violated the DCMWRA by failing to pay Plaintiffs Sanchez-Angeles and Arouni, as well as all members of the Class, overtime compensation for all hours worked in excess of 40 in a workweek at the rate of one and one-half times the employees' regular rate of pay?

    (b) Whether as a result of the overtime pay violations of the DCMWRA, Plaintiffs Sanchez-Angeles and Arouni, as well as all members of the Class, have suffered damages by failing to receive their lawful wages during their tenure of employment with Defendant and are entitled to an additional amount equal to three times the amount of unpaid wages pursuant to D.C. Code § 32-1012(b)(1) and D.C. Code § 32-1308(a)(1)(A)(ii)?

    (c) Whether as a result of the overtime pay violations of the DCMWRA, Plaintiffs Sanchez-Angeles and Arouni, as well as all members of the Class, are also entitled to an award of attorneys' fees under D.C. Code § 32-1308(a)(1)(A) and D.C. Code § 32-1308(b)?

    (d) Whether Defendant's actions in failing to compensate Plaintiffs Sanchez-Angeles and Arouni, as well as all members of the Class, in accordance with the provisions of the DCMWRA were not in good faith so as to avoid the otherwise mandatory imposition of liquidated damages equal to three times the backpay owed?

47. The claims of Plaintiffs Sanchez-Angeles and Arouni are typical of all members of the Class, and they have the same interests in this matter as all members of the Class.

48. Plaintiffs Sanchez-Angeles and Arouni are adequate Class representatives, are committed to pursuing this action, and in the undersigned attorneys have retained competent counsel experienced in wage and hour law and class action litigation.

## COUNT ONE

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

49. Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 48 above.

50. At all times material herein, Plaintiffs Sanchez-Angeles and Arouni, the opt-in Plaintiffs, and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

51. At all times material herein, Plaintiffs have worked in excess of the hourly levels for overtime compensation specified in the FLSA, 29 U.S.C. § 207. As a result, at all times material herein, Plaintiffs have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for the hours of worked in excess of 40 in a workweek.

52. From approximately October 2019 continuing to the present, Defendant has consistently failed to pay Plaintiffs the overtime compensation to which they are entitled under the FLSA by failing to compensate them for all time spent performing work activities before the start of their scheduled shifts, during their unpaid meal periods, and after the end of their scheduled shifts. Thus, Defendant has failed to compensate Plaintiffs at the rate of one and one-half times their regular rates of pay for all hours worked over 40 in a workweek.

53. By failing to pay Plaintiffs overtime compensation at the rate of one and one-half times Plaintiffs' regular rates of pay for work performed before their scheduled shifts, during their unpaid meal periods, and after the end of their scheduled shifts, as described *supra,* Defendant has violated the overtime requirements of section 207(a) of the FLSA, 29 U.S.C. § 207(a).

54. Defendant's violations of the FLSA as alleged herein have been done in a willful and bad faith manner.

55. As a result of the aforesaid willful violations of the FLSA, compensation has been unlawfully withheld by Defendant from Plaintiffs Sanchez-Angeles and Arouni, the opt-in Plaintiffs, and similarly situated persons for which the Defendant is liable pursuant to 29 U.S.C. §

216(b), together with an additional equal amount as liquidated damages, as well as reasonable attorneys' fees and the costs of this action.

56. The employment and work records for Plaintiffs and all similarly situated employees are in the exclusive possession, custody, and control of Defendant, and Plaintiffs are unable to state at this time the exact amount owing to each of them. Defendant is under a duty imposed by 29 U.S.C. § 211(c) and the regulations of the U.S. Department of Labor to maintain and preserve Plaintiffs' payroll and other employment records from which the amounts of the Defendant's liability can be ascertained.

## COUNT TWO

**VIOLATION OF THE DISTRICT OF COLUMBIA MINIMUM WAGE REVISION ACT**

57. Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 56.

58. At all times material herein, Plaintiffs Sanchez-Angeles and Arouni and all members of the Class have been entitled to the rights, protections, and benefits provided under the DCMWRA, D.C. Code § 32-1001, *et seq*.

59. At all times material herein, Plaintiffs Sanchez-Angeles and Arouni, the opt-in Plaintiffs, and all members of the Class have worked in excess of the hourly levels for overtime compensation specified in the DCMWRA, D.C. Code § 32-1003(c). As a result, at all times material herein, Plaintiffs and members of the Class have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for the hours of worked in excess of 40 in a workweek.

60. From approximately October 2019 continuing to the present, Defendant has consistently failed to pay Plaintiffs and members of the Class the overtime compensation to which

they are entitled under the DCMWRA by failing to compensate them for all time spent performing work activities before the start of their scheduled shifts, during their unpaid meal periods, and after the end of their scheduled shifts. Thus, Defendant has failed to compensate Plaintiffs and Class members at the rate of one and one-half times their regular rates of pay for all hours worked over 40 in a workweek.

61. By failing to pay Plaintiffs Sanchez-Angeles and Arouni, the opt-in plaintiffs, and Class members overtime compensation at the rate of one and one-half times their regular rates of pay for work performed before their scheduled shifts, during their unpaid meal periods, and after the end of their scheduled shifts, as described *supra*, Defendant has violated the overtime requirements of D.C. Code § 32-1003(c).

62. Defendant's violations of the DCMWRA as alleged herein have been done in a willful and bad faith manner.

63. As a result of the Defendant's willful violations of the DCMWRA, compensation has been unlawfully withheld from the Plaintiffs and Class members for which Defendant is liable, together with an additional amount equal to three times the unpaid wages as liquidated damages, as well as interest, reasonable attorneys' fees, and the costs of this action. D.C. Code § 32-1012(b)(1); D.C. Code § 32-1308(a)(1)(A).

64. The employment and work records for Plaintiffs and Class members are in the exclusive possession, custody, and control of Defendant. Plaintiffs and Class members are unable to state at this time the exact amount owing to each of them. Defendant is under a duty imposed by D.C. Code § 32-1008 to maintain and preserve the payroll and other employment records of Plaintiffs and Class members from which the full amount of Defendant's liability can be ascertained.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that this Court grant relief against the Defendant as follows:

a. Enter a declaratory judgment declaring that the Defendant has willfully and wrongfully violated their statutory and legal obligations and deprived Plaintiffs and Class members of their rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein;

b. Order a complete and accurate accounting of all the compensation to which the Plaintiffs, all others similarly situated, and Class members are entitled;

c. Award Plaintiffs Sanchez-Angeles and Arouni, the opt-in plaintiffs, and all others who are similarly situated, monetary damages under the FLSA in the form of back pay compensation and benefits, unpaid entitlements, liquidated damages equal to their unpaid compensation, and attorneys' fees and expenses;

d. Award Plaintiffs and all members Class monetary damages under the DCMWRA in the form of back pay compensation and benefits, unpaid entitlements, an additional amount equal to three times the amount of unpaid wages as liquidated damage, and attorneys' fees and expenses;

e. Award Plaintiffs Sanchez-Angeles and Arouni, the opt-in plaintiffs, all those similarly situated, and all members of the Class their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

f. Grant such other legal and equitable relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury.

Dated: March 7, 2022                                Respectfully submitted,

               */s/ Sara L. Faulman*
               Sara L. Faulman (D.C. Bar No. 496679)
               Sarah M. Block (D.C. Bar No. 1026577)
               McGILLIVARY STEELE ELKIN LLP
               1101 Vermont Ave., NW
               Suite 1000
               Washington, DC 20005
               Telephone: (202) 833-8855
               Fax: (202) 452-1090
               slf@mselaborlaw.com
               smb@mselaborlaw.com

               *Attorneys for Plaintiffs*